Argued and submitted November 20, 1989, reversed and remanded for new trial
April 25, 1990

## STATE OF OREGON,
*Respondent,*

*v.*

## MARTHA LOUISE MONROE,
*Appellant.*

### (89-60267; CA A60588)

790 P2d 1188

Shaun S. McCrea, Eugene, argued the cause for appellant.

With her on the brief were Robert J. McCrea and McCrea, P.C., Eugene.

Meg Reeves, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

## GRABER, P. J.

Defendant appeals her conviction for failure to perform the duties of a driver. ORS 811.700(1)(a).[1] She first challenges the statute as unconstitutional and also assigns error to the trial court's failure to give a requested jury instruction.[2] We reject the first assignment and reverse on the second.

Defendant was involved in a two-car accident that caused damage to the other car. She testified that she stopped at the scene of the accident, drove across the intersection, and then stopped again. According to defendant, she looked around, did not see the other car, and believed that it had left the scene; she therefore drove home. Other witnesses testified that defendant stopped only briefly or not at all.

Defendant first contends that ORS 811.700(1)(a) violates Article I, section 12, of the Oregon Constitution,[3] which provides, in pertinent part:

"No person shall be * * * compelled in any criminal prosecution to testify against himself."

ORS 811.700(1)(a) requires a driver who is involved in an

---

[1] ORS 811.700(1)(a) provides:

"A person commits the offense of failure to perform the duties of a driver when property is damaged if the person is the driver of any vehicle and the person does not perform duties required under any of the following:

"(a) If the person is the driver of any vehicle involved in an accident that results only in damage to a vehicle that is driven or attended by any other person the person must perform all of the following duties:

"(A) Immediately stop the vehicle at the scene of the accident or as close thereto as possible. Every stop required under this subparagraph shall be made without obstructing traffic more than is necessary.

"(B) Remain at the scene of the accident until the driver has fulfilled all of the requirements under this paragraph.

"(C) Give to the other driver or passenger the name and address of the driver and the registration number of the vehicle that the driver is driving and the name and address of any other occupants of the vehicle.

"(D) Upon request and if available, exhibit and give to the occupant of or person attending any vehicle damaged the number of any documents issued as evidence of driving privileges granted to the driver."

[2] Defendant also assigns as error the failure to admit certain evidence. We reject that assignment without discussion.

[3] In her statement of questions presented, defendant also claims that ORS 811.700(1)(a) violates Article I, section 34, of the Oregon Constitution and the Due Process Clause of the Fourteenth Amendment. However, the brief contains no argument on those issues, and we do not address them.

accident to supply her name and address to the other driver, among other things. Defendant argues that those two requirements compel incriminating statements, because the information "provides[s] at least two elements of a criminal prosecution for offenses ranging from driving under the influence, through reckless driving and malicious mischief, down to and including careless driving."

The Supreme Court analyzed Article I, section 12, in *In re Jennings et al.,* 154 Or 482, 59 P2d 702 (1936), which arose out of a series of prosecutions for rioting. During the course of a trial of one of the people accused of rioting, the defendants in *Jennings* were called as witnesses. They declined to answer whether they were at the scene of the riot when it occurred, relying on the privilege against self-incrimination. The court held that section 12 did not entitle any of them "to the privilege of silence unless * * * the place was a public nuisance which no one could lawfully visit * * *; or * * * by answering the witness would show that he himself was a participant in the crime." 154 Or at 521. (Citations omitted.) After citing with approval another jurisdiction's requirement of "a substantial probability" of incrimination to invoke the privilege, 154 Or at 505, the court concluded that, under section 12, the privilege "is available only when the witness is in real danger of being forced to utter from his own unwilling lips testimony which later may be used for his own prosecution, or to disclose the sources where evidence against himself [*sic*] may be obtained." 154 Or at 523. Although the opinion is far from clear, it appears to hold that a remote possibility of self-incrimination is not sufficient to trigger Article I, section 12; a substantial risk of self-incrimination is necessary.

Whether *In re Jennings et al., supra,* remains valid in a non-regulatory context is not before us. However, since it decided *Jennings,* the Oregon Supreme Court has not articulated another test for measuring the level of danger of self-incrimination to which Article I, section 12, attaches. Moreover, the "substantial risk" standard appropriately applies to a regulatory statute. That test is consistent with the United States Supreme Court's analysis under the Fifth Amendment of a statute similar to ORS 811.700(1)(a). The Supreme Court held:

"In order to invoke the privilege it is necessary to show that the compelled disclosures will themselves confront the claimant with 'substantial hazards of self incrimination.'" *California v. Byers,* 402 US 424, 429, 91 S Ct 1535, 29 L Ed 2d 9 (1971). (Citations omitted.)

The analysis in *Byers* is persuasive by analogy. *See State v. Kell,* 303 Or 89, 95, 734 P2d 334 (1987); *see also Baltimore City Department of Social Services v. Bouknight,* __ US __, 110 S Ct 900, 107 L Ed 2d 992 (1990).

We next consider whether the requirement in ORS 811.700(1)(a) that defendant give her name and address placed her substantially at risk of incriminating herself. We observe, first, that the statute does not require a report to the police, but only the furnishing of information to the other driver. That fact reduces the risk of criminal liability and suggests that prosecution is not an aim of the statute. Second, because most accidents do not result in criminal liability, the statute does not seek disclosure of information that is inherently related to criminal prosecution. *See California v. Byers, supra,* 402 US at 431. Third, the purpose of ORS 811.700(1)(a) is noncriminal. "The essence of the statute is to maximize the protection of one injured in an accident * * *." *State v. Hulsey,* 3 Or App 64, 71, 471 P2d 812 (1970); *see also State v. Burris,* 10 Or App 297, 300, 500 P2d 265 (1972).

The statute in question is primarily regulatory; it is similar to other Oregon laws that require reporting. For instance, doctors must report the deaths of patients, ORS 146.100, and issuers of securities must register. ORS 59.055. In virtually every situation that requires reporting of information, there exists *some* possibility of criminal liability for which the reported information may be an element of proof. However, that remote possibility is not enough to invoke the privilege against self-incrimination. Thus, the statute is not unconstitutional on its face.

Furthermore, in the present case, defendant has not pointed to *any* actual possibility, even a remote one, of prosecution that might have occurred had she obeyed ORS 811.700(1)(a). We conclude that the reporting of her name and address to the other driver at the scene of the accident would not have placed defendant substantially at risk of incriminat-

ing herself. Therefore, ORS 811.700(1)(a) does not violate Article I, section 12, in the way that defendant contends.

■ ■　Defendant's second assignment of error is that the court failed to give this requested instruction:

> "Although the law requires that the driver of a vehicle involved in an accident that results in damage to a vehicle must give to the other driver their [sic] name, address and the registration number of their [sic] vehicle, that act cannot be performed if it is rendered impossible because the other vehicle did not stop and remain at the scene. Therefore, if the defendant honestly and reasonably believed that the other vehicle had not stopped and remained at the scene and that it was impossible to provide her name and address to the driver or passenger of the other vehicle, she would be lawfully excused from performing such duty and could lawfully leave the scene.
>
> "A defendant who honestly and reasonably believes that it is impossible, under all the circumstances as they exist, to perform a duty that the law requires, even if they [sic] are mistaken in their [sic] belief, does not have the culpable mental state necessary to make them [sic] guilty."

ORS 161.095(2) provides:

> "Except as provided in ORS 161.105, a person is not guilty of an offense unless the person acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state."

ORS 811.700(1)(a) does not show a legislative intent to dispense with a culpable mental state, ORS 161.105(1), so the appropriate mental state is described in ORS 161.115(2):

> "Except as provided in ORS 161.105, if a statute defining an offense does not prescribe a culpable mental state, culpability is nonetheless required and is established only if a person acts intentionally, knowingly, recklessly or with criminal negligence."

Thus, if defendant actually and reasonably believed that compliance with the statute was literally impossible, she would not have had any of the required culpable mental states. Although other witnesses contradicted her, her own testimony supported the requested instruction, which correctly stated the law. Failure to give it prejudiced defendant, because the jury

could have believed that it was required to find her guilty no matter what her mental state.

Reversed and remanded for a new trial.