ARMSTRONG, P. J.
*709 Defendant appeals a judgment of conviction for two counts of delivery of marijuana to a minor, former ORS 475.860 (2011),[1] and one count of tampering with a witness, ORS 162.285, raising eight assignments of error. We reject the first three assignments-all of which relate to the trial court's denial of motions for judgment of acquittal-without written discussion. In his fourth assignment, defendant contends that the trial *271 court erred by failing to merge the two convictions for delivery of marijuana to a minor, arguing that, because he delivered the marijuana to two minors in a single criminal episode, and because the minors were not the victims of the delivery crime, the anti-merger provision in ORS 161.067(2), set out at 291 Or. App. at 711, does not apply. The state contends, and we agree, that the trial court did not err, because a minor receiving marijuana is the victim of the crime of delivery of marijuana to a minor, and, thus, ORS 161.067(2) prevents the merger of the two convictions involving the two minors. Defendant contends in his last four assignments that the trial court erred by failing to instruct the jury that the minors to whom defendant delivered marijuana were accomplice witnesses of the delivery crime, and, under ORS 136.440, set out at 291 Or. App. at 718-19, he was entitled to an accomplice-witness instruction. Because we conclude that the minors were victims of the crime, the minors could not have been accomplices to the crime under ORS 161.165(1), set out at 291 Or. App. at 719, and, thus, the trial court did not err by refusing to give defendant's requested accomplice-witness jury instruction. Accordingly, we affirm.
Defendant lived with his step-granddaughter, L, who was a minor. One evening, L had two friends, D and H, who also were minors, visit. Each of the three minors testified that defendant gave them marijuana, but each of them offered slightly differing accounts about how that had happened. D testified that defendant gave D and H marijuana while they were in L's room. According to D, defendant *710 handed the marijuana "through the doorway, and [H] got up and grabbed it from his hand," and then D and H smoked it together. L testified that defendant handed marijuana and a pipe through L's bedroom door and D-not H-took it, and then D and H smoked marijuana together. However, H testified that "we got marijuana from [defendant]" and that only L and H smoked it. H did not testify as to how defendant had given them the marijuana.
Months later, L told a police officer that defendant had given her and her friends marijuana on the earlier occasion. The state thereafter charged defendant with, among other things, two counts of delivery of marijuana to a minor under former ORS 475.860 -one count for delivery to both D and H.
At the close of the state's case, defendant moved to instruct the jury that the minors who received the marijuana were accomplice witnesses to defendant's delivery crime. He contended that two of the witnesses, D and H, were accomplice witnesses because there was testimony that each of them had received the marijuana from defendant and had given it to the other minor, which aided and abetted defendant's delivery. Similarly, defendant argued that, because there was testimony that L and H had smoked marijuana together, it was reasonable to infer that L had received the marijuana from defendant and had given it to H, and, thus, L was also an accomplice. In sum, he argued that, because there was evidence that each of the minors had aided and abetted the delivery of marijuana to the other minors, he was entitled to have the jury instructed on the legal principles that apply to accomplice witnesses. The trial court did not give the requested instruction, concluding that defendant's delivery was completed as soon as he gave the marijuana to the minors by handing it through the door or by giving it to L, and, because the only evidence presented of each witness aiding and abetting defendant's delivery involved conduct that occurred after the commission of the crime, none of the witnesses could have been accomplices. Ultimately, the jury convicted defendant of two counts of delivery of marijuana to a minor, former ORS 475.860(4)(a), among other crimes. At sentencing, defendant moved to merge the delivery convictions, arguing that the anti-merger *711 statute, ORS 161.067(2), did not apply because there was only one victim of the two counts of delivery of marijuana to a minor, viz. , the state. The trial court denied defendant's motion and entered convictions on both delivery counts.
Defendant appeals, assigning error to the trial court's denial of his motion to merge the convictions and to the trial court's refusal to *272 instruct the jury that the three minor witnesses were accomplices to the delivery.[2]
We consider the merger issue first because that analysis informs our resolution of the instructional issue. We review for legal error whether the trial court erred in failing to merge the convictions. See, e.g. , State v. Watkins , 236 Or. App. 339, 345, 236 P.3d 770, rev. den. , 349 Or. 480, 246 P.3d 745 (2010). The applicable anti-merger statute, ORS 161.067(2), provides that, "[w]hen the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims." Because defendant was convicted of two counts of delivery of marijuana to a minor for a single delivery, our task is to determine who is the victim of that crime.
In State v. Glaspey , 337 Or. 558, 563, 100 P.3d 730 (2004), the Supreme Court established the analytical framework to determine, for purposes of ORS 161.067(2), who are the victims of a crime. There, the defendant was convicted of fourth-degree assault, which normally is a Class A misdemeanor. See ORS 163.160(2). However, fourth-degree assault becomes a Class C felony under specified circumstances, including when the
"assault is committed in the immediate presence of, or is witnessed by, the person's or the victim's minor child or stepchild or a minor child residing within the household of the person or victim."
ORS 163.160(3)(a). The defendant in Glaspey had assaulted his wife in the presence of their two minor children. The defendant ultimately was convicted of two counts of fourth-degree assault, one count for each of the child witnesses.
*712 The defendant moved to merge the two counts under ORS 161.067(2), arguing that there was only one victim of the crime, his wife. Both we and the trial court concluded that the child witnesses were victims of defendant's assault of his wife and, hence, that the two assault counts did not merge. The Supreme Court reversed, concluding that there was only one victim of the assault-defendant's wife-and that the trial court had erred by failing to merge the convictions.
The court in Glaspey analyzed the underlying criminal statute defining the crime to determine for purposes of ORS 161.067(2) whom the legislature intended the victim of the crime to be. 337 Or. at 563, 100 P.3d 730. The court began with the text of the assault statute, which used the term "victim" to refer to "the person who is directly and physically injured by an assault," but which did not use that term to refer to the child witnesses. Id. at 565, 100 P.3d 730. From that, the court reasoned that, had the legislature intended the child witnesses to be victims of the crime, it would not have structured the crime the way that it did, viz. , by using the term "victim" to refer to the person assaulted but not using that term to refer to the child witnesses. Id. The court also analyzed other crimes as contextual support for its conclusion that the victim of the assault statute was "the person directly and physically injured by an assault." Id. The court compared the gravamen of the crime with that of other crimes in which the legislature had used the term "victim" in defining the crime. The court noted that, "[o]rdinarily, when the term 'victim' is used in a statute that defines a criminal offense, it is used in the precise sense of a person who suffers harm that is an element of the offense." Id. Thus, the court concluded, the only victim of fourth-degree assault was the person assaulted, and, accordingly, the trial court had erred by failing to merge the defendant's two convictions. Id. at 567, 100 P.3d 730.
We applied the principles from Glaspey in State v. Moncada , 241 Or. App. 202, 250 P.3d 31 (2011), rev. den. , 351 Or. 545, 274 P.3d 184 (2012). There, the defendant was the driver of a motor vehicle who had fled the scene of a vehicular accident in which two people were killed. The defendant was convicted, among other things, of two counts of failing to perform the duties of a driver, ORS 811.705. The defendant *713 argued that, because that statute did not use the term "victim," and because "there was no evidence that defendant's criminal conduct-that is, leaving the scene of the accident without rendering aid-injured [the two people,]" the victim of the *273 crime was the state. 241 Or. App. at 205, 250 P.3d 31. Thus, the defendant contended, ORS 161.067(2) did not prevent the merger of the two convictions for failure to perform the duties of a driver.
We synthesized the rule from Glaspey and from a subsequent case, State v. Luers , 211 Or. App. 34, 153 P.3d 688, adh'd to as modified on recons. , 213 Or. App. 389, 160 P.3d 1013 (2007), as follows:
"Where the statute defining a crime does not expressly identify the person who qualifies as a 'victim,' the court examines the statute to identify the gravamen of the crime and determine the class of persons whom the legislature intended to directly protect by way of the criminal proscription."
Moncada , 241 Or. App. at 212, 250 P.3d 31. Applying that rule, we analyzed the legislative purpose in enacting the crime at issue in Moncada and, from that, the corresponding gravamen of the crime. We concluded that the legislature's purpose in enacting the crime of failing to perform the duties of a driver was to ensure, among other things, that injured people receive aid at the scene of an accident. Id. at 208, 250 P.3d 31 (citing State v. Hamlett , 235 Or. App. 72, 78, 230 P.3d 92 (2010) (legislative purpose of statute used to determine mental state required for the crime)). From that purpose, we concluded that the gravamen of the crime is to require drivers to perform mandated statutory duties, including requiring a driver to render aid to people injured in an accident. Thus, the legislature intended to protect people injured in vehicular accidents, and it followed that the victims of the crime were the people injured in the vehicular accident. Id. at 212, 250 P.3d 31. Accordingly, the trial court did not err by not merging the defendant's convictions.
With that analytical framework in mind, we turn to the statute under which defendant was convicted here, former ORS 475.860, which made delivery of marijuana a *714 crime and, in turn, delivery of marijuana to a minor a Class A felony. Former ORS 475.860 provided:
"(1) It is unlawful for any person to deliver marijuana.
"(2) Unlawful delivery of marijuana is a:
"(a) Class B felony if the delivery is for consideration.
"(b) Class C felony if the delivery is for no consideration.
"(3) Notwithstanding subsection (2) of this section, unlawful delivery of marijuana is a:
"(a) Class A misdemeanor, if the delivery is for no consideration and consists of less than one avoirdupois ounce of the dried leaves, stems and flowers of the plant Cannabis family Moraceae; or
"(b) Violation, if the delivery is for no consideration and consists of less than five grams of the dried leaves, stems and flowers of the plant Cannabis family Moraceae. A violation under this paragraph is a specific fine violation. The presumptive fine for a violation under this paragraph is $650.
"(4) Notwithstanding subsections (2) and (3) of this section, unlawful delivery of marijuana is a:
"(a) Class A felony, if the delivery is to a person under 18 years of age and the defendant is at least 18 years of age and is at least three years older than the person to whom the marijuana is delivered; or
"(b) Class C misdemeanor, if the delivery:
"(A) Is for no consideration;
"(B) Consists of less than five grams of the dried leaves, stems and flowers of the plant Cannabis family Moraceae;
"(C) Takes place in a public place, as defined in ORS 161.015, that is within 1,000 feet of the real property comprising a public or private elementary, secondary or career school attended primarily by minors; and
"(D) Is to a person who is 18 years of age or older."
(Emphasis added.)
*715 Defendant contends that the victim of the crime of unlawful delivery of marijuana is the state; hence, there is only one victim of the crime for purposes of ORS 161.067(2). The state responds that the minors to whom defendant delivered the marijuana are the *274 victims of the crime; hence, the trial court did not err by denying defendant's motion to merge the convictions.
We begin with the purpose of the statute. In State v. Jimenez-Correo , 248 Or. App. 200, 273 P.3d 232 (2012), we analyzed the 2001 version of the statute defining the crime of delivery of marijuana to a minor to determine the mental state that applied to the element of the crime regarding the age of the person to whom the delivery was made.[3] In doing that, we relied on State v. Rutley , 343 Or 368, 376, 171 P.3d 361 (2007), in which the Supreme Court had analyzed the purpose of the statute defining the crime of delivery of marijuana within 1,000 feet of a school as follows:
"Beginning with the text, we conclude that the statute evidences a clear legislative intent to give drug dealers a reason to locate the 1,000-foot school boundary and stay outside it-by punishing the failure to do so as the most serious of crimes, a Class A felony. The statutory text leaves no doubt that the legislature intended to protect children from drug use and the violence and other negative influences that accompany drug delivery. Children are exposed to those negative influences when drugs are delivered near schools, regardless of whether the dealers know they are within 1,000 feet of a school. In our view, requiring a knowing mental state with regard to the distance element would work against the obvious legislative purpose, in that it would create an incentive for drug dealers not to identify schools, and not to take into consideration their distance from them in engaging in their illegal activity."
*716 (First emphasis added; citation omitted.) The Supreme Court concluded that "the legislature's obvious intent [was] to protect children from predatory drug dealers by enhancing the penalty for delivery in the vicinity of a school." Id. at 377, 171 P.3d 361. Relying on the legislative intention behind the prohibition against the delivery of marijuana within 1,000 feet of a school, we concluded in Jimenez-Correo that, "by making delivery of marijuana to a minor a more serious crime, the legislature clearly intended to address the need to protect children from drug use." 248 Or. App. at 210, 273 P.3d 232 (footnote omitted).
The reasoning from Jimenez-Correo and Rutley informs our understanding here. The purpose of the statute defining the crime of delivery of marijuana to a minor is the same here as it was in Jimenez-Correo , viz. , to protect children against drug use and the corresponding dangers associated with drug delivery. From that, the gravamen of the crime is delivering marijuana to minors. Thus, the victim of the crime of delivery of marijuana to a minor is the minor who receives the marijuana. That understanding is also supported by the legislative history of the statute.
The bill that enacted the version of the statute at issue here was intended to address rising methamphetamine use. See Or. Laws 2005, ch. 708, §§ 7-18, 34-38. The legislature was concerned with preventing people, especially children, from becoming addicted to methamphetamine. See, e.g. , Tape Recording, Senate Committee on Judiciary, S.B. 907, S.B. 910, S.B. 911, H.B. 2485, Mar. 17, 2005, Tape 69, Side B (statement of Dr. Richard Rawson). To achieve that end, the legislature was told of the importance of preventing young people from being exposed to drugs, including marijuana. See, e.g. , Tape Recording, Senate Committee on Judiciary, S.B. 907, S.B. 910, S.B. 911, H.B. 2485, Mar. 17, 2005, Tape 71, Side A (statement of Dr. Susan M. Paddock) (discussing school-based drug-prevention programs, which included programs to prevent marijuana use by minors).
*275 Although not directly addressed to whether a minor who receives marijuana is the victim of the delivery crime for purposes of ORS 167.067(2), the legislative history evinces a legislative intention to protect children against the use of drugs, including marijuana, to reduce their risk of drug *717 addiction. That history corresponds with the legislative purpose recognized in Jimenez-Correo behind the prior version of the delivery to a minor statute.
Defendant makes several related arguments to support his contrary contention that the victim of former ORS 475.860 is the state and not the minors to whom he delivered marijuana. First, relying on the proposition that drug-possession crimes are "victimless crimes," defendant argues that drug-delivery crimes also are victimless, because the "willing recipient" of a drug delivery merely possesses drugs.[4] Next, he argues that the structure of former ORS 475.860 does not evince a legislative intention to make a minor who receives marijuana the victim of a delivery crime, as distinguished from the state, which is the victim of delivery crimes other than delivery to a minor. Defendant claims support for his structural argument in State v. Wright , 150 Or. App. 159, 945 P.2d 1083 (1997), rev. den. , 326 Or. 390, 952 P.2d 63 (1998), and State v. Dominguez-Coronado , 215 Or. App. 7, 168 P.3d 291 (2007), rev. den. , 345 Or. 396, 198 P.3d 908 (2008), in which we held that the sub-category factors of "substantial quantity" and "commercial drug offense" for the crime of unlawful delivery of marijuana were all part of the same crime of delivery of a controlled substance under former ORS 475.860 for purposes of merger under ORS 161.067(1).[5] Defendant reasons from those cases that the legislature has structured the delivery crimes so that the age of the recipient is merely a sentencing factor equivalent to the sentencing factor embodied in the assault statute in Glaspey . Defendant then points to a statement in Glaspey in which the court noted that the legislature did not intend for people who suffer "harm of any sort, and even the mere potential for harm" to be victims of the crime in that *718 case for purposes of ORS 161.067(2), Glaspey , 337 Or. at 567, 100 P.3d 730, which is a principle that defendant contends equally applies to former ORS 475.860. He concludes that the legislature intended the crime of delivery of marijuana to be a victimless crime regardless of whether the recipient was an adult or a minor.
Defendant's arguments rest on the foundation that, because possession of an unlawful drug is a victimless crime, so, too, is the crime of delivering unlawful drugs to people. However, defendant fails to explain why that is so, especially when the delivery is to a minor. A minor might well want to use marijuana, but it does not follow that the legislature intended delivery of marijuana to a minor to be a victimless crime. But, more fundamentally, defendant's argument ignores our central task, which is to use the purpose behind the statute and the corresponding gravamen of the crime embodied in it to "determine the class of persons whom the legislature intended to directly protect by way of the criminal proscription." Moncada , 241 Or. App. at 212, 250 P.3d 31. None of defendant's arguments leads us to conclude that the legislature intended the crime of delivery of marijuana to minors to be a victimless crime. To the contrary, the legislature was concerned with the direct harms that are associated with drug delivery to minors. Additionally, unlike the assault statute in Glaspey , former ORS 475.860 does not use the term "victim" in it, and, thus, textual analysis of the type employed in Glaspey *276 does not aid us in our analysis of former ORS 475.860. Accordingly, we conclude that the legislature intended the minor recipients of marijuana to be the victims of the crime of delivery of marijuana to a minor for purposes of ORS 161.067(2). Thus, the trial court did not err by denying defendant's motion to merge defendant's delivery convictions.
We turn to whether the trial court erred by failing to give defendant's requested jury instruction on accomplice witnesses. ORS 136.440(1) provides that a "conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence that tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission *719 of the offense or the circumstances of the commission." In turn, under ORS 136.440(2), an accomplice witness in a criminal action is someone who "is criminally liable for the conduct of the defendant under ORS 161.155 and ORS 161.165." Defendant argues that the trial court erred by failing to give his requested accomplice-witness jury instruction because the evidence, viewed in the light most favorable to him, shows that defendant gave the marijuana to each minor and that they passed the marijuana among themselves. Defendant argues that there was sufficient evidence to allow the jury to conclude that each minor acted as an accomplice to defendant's delivery of marijuana to the other minors. Thus, defendant contends, the jury should have been instructed on the legal principles that apply to accomplice witnesses.
We disagree. Under ORS 161.165(1), "a person is not criminally liable for the conduct of another constituting a crime if" the "person is a victim of that crime." The parties agree that the legislature intended "victim" for purposes of the anti-merger statute, ORS 161.067, to have the same meaning as "victim" for purposes of criminal liability under ORS 161.165, and, we can discern no plausible legislative intention to have the term "victim" mean different things in ORS 161.067 and ORS 161.165. Because we already have concluded that the minor recipient of marijuana is the victim of the crime of delivery of marijuana to a minor, it follows that the minors were not accomplice witnesses to the crime. Hence, the trial court did not err by refusing to give defendant's requested jury instruction on accomplice witnesses.[6]
Affirmed.

Former ORS 475.860 was repealed by Oregon Laws 2017, chapter 21, section 126, and replaced with a different, but similar, delivery crime. See Or. Laws 2017, ch. 21, § 5. All references to the statute are to the 2011 version.

As noted, we do not address defendant's other assignments of error.

The prior version provided, in part:
"(5) * * * [D]elivery of marijuana to a minor is a Class A felony if:
"(a) The defendant is 18 years of age or over; and
"(b) The conviction is for delivery of marijuana to a person under 18 years of age who is at least three years younger than the defendant."
ORS 475.995(5) (2001). The changes between that version and former ORS 475.860, which we analyze here, do not evince a legislative intention to alter the purpose of the statute, which, as explained below, is to protect children against drug use and its effects.

We understand defendant to use the term "victimless crime" to refer to a crime that does not have an individual victim but for which the victim is either the state or the general public. See generally State v. Torres, 249 Or. App. 571, 573, 575, 277 P.3d 641, rev. den. , 352 Or. 378, 290 P.3d 814 (2012) (in addressing defendant's argument that felon in possession of a firearm is a "victimless crime" for merger purposes, court observed that, depending on context, the term "victim" can "refer, among other variations, to persons, the state, or the public at large"). We use that term in the same way in this opinion.

ORS 161.067(1) provides that, "[w]hen the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations."

In light of our conclusion that the minors were victims, we need not address the trial court's conclusion that the delivery was completed when defendant handed the marijuana through the door. We can affirm the trial court on the alternate basis on which we do because it involves purely a legal question and because the record would not have developed differently if the argument on which we rely had been made below. See Outdoor Media Dimensions Inc. v. State of Oregon , 331 Or. 634, 659-60, 20 P.3d 180 (2001) (setting out basis to affirm a ruling on an alternate basis).